**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :        PENNSYLVANIA |
| v. | : |
| | : |
| NOLAN DONALD GROVE | : |
| | : |
| Appellant | : No. 1381 MDA 2025 |

Appeal from the Judgment of Sentence Entered August 28, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003241-2023

BEFORE: KUNSELMAN, J., LANE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:      **FILED: AUGUST 3, 2026**

Nolan Grove appeals from the judgment of sentence imposing 16 to 32 years' incarceration after a jury convicted him of murder of the third degree and related offenses.[1] He contends that the trial court incorrectly answered a question from the jury concerning malice. Grove makes arguments to this Court that he did not raise below regarding why he believes the trial court's answer to the jury's question was incorrect. Hence, we dismiss his appellate issue as waived and affirm.

In 2023, Grove, and his friends, Kain Heiland and Miles Belleman, were middle schoolers together in Red Lion, Pennsylvania. On Saturday, April 1, 2023, the boys were hanging out and planning a sleepover for that evening. At some point, Grove gained unauthorized access to his father's pistol and, throughout the day, repeatedly aimed its red-laser pointer at Mr. Heiland.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 2504(a), 2705, 6110.1(a), and 6106(a)(1).

*See* N.T., 6/3/25, at 270-73. As evening settled, the boys left Grove's home to walk around the town. Grove brought the gun in his hoodie pocket.

Around 9:00 p.m., they entered a dark alley. Grove spoke impolitely about Mr. Heiland's mother, and Mr. Heiland told Grove to "shut up." *Id.* at 284. Grove then pulled out the gun, "put it to [Mr. Heiland's] back[,] and said . . . 'you know what will happen.'" *Id.* at 347. He held the gun for "a second or two" and shot Mr. Heiland in the back. *Id.* at 348. Mr. Heiland died.

Grove and Mr. Belleman fled without calling for help to their separate homes. Grove then messaged Mr. Belleman on Snapchat to direct him "not to tell anyone what happened." *Id.* at 286, 289.

After an investigation, police arrested Grove. Because he was 13 years old, the case began in juvenile court. The Commonwealth transferred it to the criminal division, and the matter eventually proceeded to a jury trial. Mr. Belleman testified to the above facts.

Grove then testified during his defense. He said that he did not know how many bullets were in the gun. *See* N.T., 6/6/25, at 1060. He described events in the alley very differently from Mr. Belleman. Grove claimed it was so dark that he "couldn't see. So, [he] put the gun in [his] hand shining the laser, because [he knew] there was a pothole somewhere in there." *Id.* at 1064. He claimed to have used the laser pointer to avoid the pothole. After stepping over the hole, Grove "didn't realize [he still] had the gun in [his] hand at that moment, and it did go off." *Id.* He was the last person to testify, and the case went to the jury.

During their deliberation, the jurors posed a question regarding malice to the court: "Is it legally relevant whether or not [Grove] believed the gun was loaded, bullet in the chamber?" N.T., 6/10/25, at 1313.

Before bringing the jury back into the courtroom, the parties and trial court debated how the court should answer the question. The assistant district attorneys relied on ***Commonwealth v. Young***, 431 A.2d 230 (Pa. 1981), to contend that intentionally pointing a firearm at someone is sufficient to prove a reckless disregard of the clear risk that the gun could accidentally discharge and kill the other person.

The trial court recited the following excerpt from ***Young***:

> [T]here was sufficient evidence to prove malicious homicide beyond a reasonable doubt. [Young] intentionally pointed a loaded gun at the victim and shot him in the chest. Under these circumstances, whether the gun discharged accidentally or was fired intentionally is irrelevant for the purpose of determining the existence of malice. Even if, as [Young] claims, he did not know that the gun was loaded and intended only to scare the victim, his conduct nevertheless unjustifiably created an extremely high degree of risk, thereby evincing a wanton and reckless disregard for human life by intentionally aiming a gun at [the victim] without knowing for a certainty that it was not loaded. [Young] exhibited that type of cruel and wanton conduct of which legal malice is made.

*Id.* at 1315-16.

Defense counsel tried to distinguish ***Young*** based on contradictions in Mr. Belleman's and Grove's recollections of the events in the alley. Defense counsel contended that whether Grove actually pointed the gun at Mr. Heiland was in factual question. ***See id.*** at 1316.

He argued, "If [the jurors] believe [that Grove] intentionally pointed [the gun] at him, that's one thing. If they believe he didn't intend to point it at him, as my client indicated, then [whether Grove thought the gun was empty] does matter." *Id.* at 1317. In *Young*, the defendant "admitted that [he] intentionally pointed the gun at the person who was shot . . . So, not knowing whether the gun is loaded and intentionally pointing the gun at them and the gun going off, that's different." *Id.* "[W]hether [Grove] believed the gun was loaded or unloaded, that's the relevant part of it." *Id.* at 1318.

The trial court asked, "Why is that the relevant part though?" *Id.*

"Because that goes to his *mens rea*," and, "if [Grove] believed the gun was unloaded, unlike [*Young*] where the guy didn't know whether the gun was loaded or unloaded, didn't have a belief one way or the other . . . . [Grove] indicated he was under the belief, albeit mistakenly, the gun would have been unloaded at the time." *Id.* at 1318-19. "The issue isn't whether the gun was unloaded or loaded. It's what [Grove's] belief was." *Id.* at 1320.

The court responded, "No, it's not what [his] belief is." *Id.*

The defense replied, "Your answer is going to have to be crafted at the time that the shot went off." *Id.* Defense counsel also requested that the court include an instruction that, if Grove did not intentionally point the gun at Mr. Heiland, then the jury could not find malice. The trial court rejected his request; in its view, the definition of malice was broader than that.

Relying upon *Young*, the court answered the jury's question as follows:

If you find that Nolan Grove intentionally pointed the gun at [Mr.] Heiland without knowing for certainty that it was not loaded, then you may find that Nolan Grove acted with malice. But that's your decision. You have to review all of the facts of the case and decide was the gun pointed, [or] wasn't the gun pointed. Whether he knew for certainty whether it was loaded or not is not necessarily a factor for determining malice. That's what the case law will tell us.

*Id.* at 1329.

The court held a sidebar regarding its answer. The defense objected on two grounds. First, the court did not give the inverse instruction. "I want to put my exception on the record that I also wanted the reverse said: [if] you find that he didn't intentionally [point the gun], you can't find malice, number one." *Id.* at 1332.[2] Defense counsel's second ground for objection was that he "wanted [the court] to indicate that [it was] talking about at the time of the shooting . . . [b]ecause the malice has to happen in conjunction with the shooting." *Id.* at 1333.

The Commonwealth answered both grounds of objection, and the trial court overruled the objections by refusing to amend its answer. *See id.* at 1333-35.

The jury convicted Grove, and the court sentenced him as described above. This timely appeal followed.

---

[2] We note that the court stenographer accidentally recorded the first ground for objection as if coming from the assistant district attorney. Given the context of the statement, however, it is clear that defense counsel objected to the trial court's answer to the jury's question.

Grove raises one issue. He asks whether the trial court's answer to the jury's question was an abuse of discretion. **See** Grove's Brief at 2.

He claims the trial court's answer as a whole was "somewhat confusing at best." **Id.** at 19. In Grove's view, the answer "imposes strict culpability upon a person who points any gun at anyone which may result in injury or death." **Id.** He also asserts that the latter part of the answer conflicted with its first part, because the trial court omitted the adjective "intentionally" from the third sentence of its answer. **See id.** at 19-20. According to Grove, this "statement takes away any choice the jury might have to determine if [he] acted with malice, as long as the Commonwealth could prove beyond reasonable doubt that [Grove] pointed a gun whether accidentally or intentionally at the victim." **Id.** at 20.

When objecting to the trial court's answer to the jury's question, Grove neither claimed that the answer imposed strict liability nor that its answer was confusing because of the absence of the word "intentionally" from the third sentence. Grove's newly minted arguments implicate waiver.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). As the Supreme Court of Pennsylvania has often stated, "issue preservation is foundational to proper appellate review." **In re F.C. III**, 2 A.3d 1201, 1211 (Pa. 2010).

- 6 -

"Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." ***Trigg***, 229 A.3d at 269. "It also promotes the orderly and efficient use of judicial resources, ensures fundamental fairness to the parties, and accounts for the expense attendant to appellate litigation." ***Id.***

Here, Grove did not raise either ground for objection to the trial court's answer during his jury trial that he now attempts to advance on appeal. Thus, he deprived the Commonwealth of the opportunity to respond to them below. More importantly, he deprived the trial court of the opportunity to address his new theories in the first instance and to make any necessary corrections to its answer ***before*** the jury returned to its deliberation.

Accordingly, Grove may not raise his two, new grounds for objection (*i.e.*, that the answer imposed strict liability and it confused the jury) for the first time on appeal. **See** Pa.R.A.P. 302(a); **see Trigg**, **supra**. Therefore, we dismiss Grove's new arguments and his appellate issue as waived.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/3/2026